4024.   YOUNG *v.* PENINSULAR NAVAL STORES CO.

The allegations of the petition set forth a cause of action.
                    DECIDED JULY 23, 1912.

Attachment; from Brooks superior court—Judge Thomas. November 8, 1911.

*Branch & Snow,* for plaintiff.
*Denmark & Griffin,* for defendant.

HILL, C. J. This case is here on exceptions to the judgment sustaining a general demurrer and dismissing the petition. The facts alleged in the petition are as follows: Plaintiff had been engaged in the naval stores business, and the defendant had acted as his factor. In the course of his business he had been accustomed to ship naval stores to the defendant, which would sell them for him, and, after paying expenses and deducting commissions, would hold the remainder subject to the plaintiff's draft. Plaintiff sold to Frank L. Gibson his turpentine property and entered into a

contract with Gibson by which the latter was to pay, as a part of the consideration for the property, plaintiff's note for $3,000, held by defendant, which was not due until May 1, 1910. When the sale was made, plaintiff had on deposit to his credit with defendant, on open account, $450.42, which was subject to plaintiff's draft at any time. On January 31, three months before this note fell due, and while the money due the plaintiff was still deposited with the defendant, Gibson went to the office of the defendant in Jacksonville, for the purpose of complying with his contract and paying the note. It is expressly alleged that Gibson was at that time ready, willing, and able to pay the note, and offered to do so. The defendant declined to accept the $3,000 in payment of the note from Gibson, but did accept from Gibson for the note an amount less than its face, and charged the balance due on the note to the open account. The allegation is also specifically made that Gibson, at the time of the institution of the present suit, was insolvent, and is still insolvent. On demand the defendant refused to pay the $450.42 to the plaintiff, and the suit is to recover that amount.

In our opinion the application by the defendant, the Peninsular Naval Stores Company, of the amount due the plaintiff, which it held subject to his draft, in part payment of the note which it held against him and which was not due, was unauthorized, especially in view of the fact that Gibson offered to pay to the defendant the whole amount of the note, in accordance with his agreement with the plaintiff. The defendant, without making any investigation as to Gibson's authority to pay less than the full amount of the note, refused to accept Gibson's tender of the full amount, and accepted from him a less amount. The allegations of the petition are that Gibson was ready, able, and willing to pay the note in full, and offered to do so, and that the defendant declined to accept the cash; and these allegations are admitted by the demurrer to be true. In other words, it must be accepted as a fact that the defendant deliberately refused to accept the full amount of the note which Gibson offered to pay, and which, under Gibson's contract with the plaintiff, he was bound to pay to the defendant; and the defendant, by investigation or inquiry, could have found that Gibson was not authorized to pay less than the full amount, and was not authorized to receive from the defendant any credit by open account in part discharge of the note. The legal and actual effect

was that Gibson paid to the defendant $450.42 which belonged to the plaintiff, and which was subject to the plaintiff's draft, without making any inquiry as to his right or authority to accept this credit on the note, and without endeavoring to find out whether the credit on this open account was a proper payment on the note. Of course the plaintiff was under no duty to put the defendant on notice of his contract with Gibson, for he was under no duty to pay the note until its maturity on May 1st.

The defendant could properly have refused to accept payment on the note when Gibson offered payment, upon the ground that the note was not then due; but if it accepted payment, it was under a duty to accept the payment as tendered, and it had no right to charge against the plaintiff the $450.42 due him and subject to his draft, as part payment of the note, which was not due until three months thereafter. The general rule is that a creditor can not apply a deposit to an indebtedness that has not matured. 5 Cyc. 553. Of course, this general rule is subject to an exception where the debtor or owner of the deposit is insolvent. This unwarranted application of the deposit to the plaintiff's unmatured note left Gibson indebted to the plaintiff, under his contract, in the sum of $450.42, and this sum can not be collected by the plaintiff out of Gibson, for the reason, as alleged, that Gibson is insolvent. Now, if the defendant had accepted the tender of Gibson, the only tender that he was authorized to make or that the defendant was authorized to accept, to wit, payment of the full amount of the note in cash, the defendant would still have held on deposit the $450.42 belonging to the plaintiff and which was subject to his draft. It was the unauthorized appropriation of this deposit by the defendant on the note, instead of accepting the cash from Gibson, that has resulted in loss to the plaintiff. Now, who should lose this money, the plaintiff or the defendant? Even conceding to the defendant good faith and good motive in making the application of the deposit to the note as part payment, and in refusing to accept the full amount tendered, we must also concede that the plaintiff can not be charged with any lack of good faith in offering to pay in cash his note which was not matured. It was the refusal of the defendant to accept the cash from Gibson that put it in the power of Gibson to commit a legal wrong upon the plaintiff by refusing to pay the balance of his note which he

owed to the plaintiff, or (which is the same thing) put it out of the power of Gibson, by reason of Gibson's subsequent insolvency, to pay this balance to the plaintiff. The loss is not due to any act of the plaintiff, but is solely due to the unauthorized act of the defendant; which makes applicable the familiar doctrine that "when one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury must bear the loss." Civil Code (1910), § 4537. Did not the defendant put it in Gibson's power to commit a legal wrong upon the plaintiff, that is, by a refusal or inability to pay the balance which Gibson owed to plaintiff under the contract? We think so; because the allegations of the petition are distinct that Gibson was ready, able, and willing to pay the full amount of the note, and offered to pay the same to the defendant, who declined to accept it; and the allegation is also made that Gibson, at the time when the present suit was instituted, was insolvent and is still insolvent. We think that justice and equity require that the defendant should be held responsible for this loss. The loss was due alone to the defendant's refusal to accept the cash from Gibson, and the unauthorized credit of plaintiff's deposit on the note.

The position here stated becomes more clearly manifest upon an examination of the copy of the contract between Gibson and the plaintiff, which is attached to the petition. It appears from this contract that the plaintiff's turpentine farm and still were sold by him to Gibson, subject to a mortgage which the plaintiff had made to the defendant to secure this very note for $3,000 which Gibson was to pay, and Gibson's contract was to assume the payment of this note. Gibson's title to this place was subject to the lien of the mortgage, and he could not dispose of the place until the mortgage was paid in full. Now, when the defendant surrendered to Gibson the plaintiff's note, marked "paid," this was in legal effect a satisfaction of this mortgage, and took it out of the power of the plaintiff to compel Gibson to comply with his contract; for Gibson could then sell the place free from the mortgage. As a result of this negligent conduct and unauthorized act on the part of the defendant, the plaintiff has been deprived of his leverage, in the form of this mortgage, to force Gibson to pay the note, or to pay

the $450.42 which he unquestionably owes to the plaintiff on his contract, and he has sold this place and has become insolvent.

We conclude that under the allegations of the petition, a cause of action was set out, and the judge erred in sustaining the demurrer thereto.                              *Judgment reversed.*